UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| JAMES MICHAEL DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | 2:26-CV-00099-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| BELLA VISTA ENTERPRISES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss [Doc. 10], and Plaintiff's Motion for Expedited Ruling on Pending Pro Se E-Filer Motion [Doc. 18], Motion to Deny Defendant's Motion to Dismiss [Doc. 19], Emergency Motion for Status Conference and for Order Requiring Notice Before Any Application for Prejudgment Attachment, Garnishment, or Restraint of Home-Sale Proceeds [Doc. 20], and Notice Regarding Service of Todd Paul Baszucki and Motion for Clarification, Issuance of Summons, or Extension of Time if Necessary [Doc. 21]. For the reasons stated herein, the Court will grant Defendants' motion to dismiss and will deny Plaintiff's motions.

**I. BACKGROUND**

This case is about a contract dispute between Penobscot Enterprises International, Inc. ("Penobscot") and Bella Vista Enterprises, LLC ("Bella Vista"). On June 12, 2024, Bella Vista agreed to purchase 562,500 shares of Ballistic Barrier Products, Inc. stock from Penobscot for a total purchase price of $1,125,000. [Doc. 17, ¶ 8]. Penobscot transferred the shares, and Bella Vista paid part of the purchase price. The remaining balance was to be paid pursuant to a payment schedule, with the final payment due on October 17, 2025. [Doc. 17, Ex. B]. A few months after

executing the contract, Penobscot assigned Plaintiff James Michael Davis its rights, title, and interest in the contract rights arising from this agreement.[1]  [Doc. 17, ¶ 17].  Plaintiff claims that after making some of the installation payments, Bella Vista suddenly stopped paying and now owes an unpaid balance of at least $625,000.  [*Id.* at ¶ 9].

Plaintiff filed the original Complaint in this case on March 27, 2026 in the Chancery Court for Sullivan County, Tennessee.  Defendants removed the case to federal court based on the Court's diversity jurisdiction on May 1, 2026 [Doc. 1], and shortly thereafter moved to dismiss the case for failure to state a claim [Doc. 10].  Plaintiff filed an Amended Complaint as a matter of course within twenty-one days of the filing of the motion to dismiss.  In the Amended Complaint, Plaintiff raises four causes of action: breach of contract, declaratory relief regarding the contract, equitable relief to pierce the veil of Defendant Bella Vista, and unjust enrichment. [Doc. 17]. Plaintiff has also moved to deny the motion to dismiss as moot following his amended complaint, or, alternatively, for more time to respond to the motion. [Doc. 19]. The Court will first address this motion before considering the merits of Defendants' motion to dismiss.

## II. PLAINTIFF'S MOTION TO DENY DEFENDANTS' MOTION TO DISMISS AS MOOT OR, ALTERNATIVELY, FOR EXTENSION OF TIME TO RESPOND [DOC. 19]

Generally, an "amended complaint supersedes the original complaint, thus making the motion to dismiss the original complaint moot." *Ky. Press Ass'n v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000) (holding that an amended complaint supersedes any previous complaints and becomes the legally operative pleading)).  However, "if some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 919 (E.D. Mich. 2022) (quoting

---

[1]  Penobscot is now a dissolved corporation.

*Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002); *see also Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 641 n. 1 (E.D. Pa. 1999) (if the amended complaint suffers from the same deficiencies addressed in motion to dismiss, the court may consider that motion as addressing the amended complaint); *Patton Elec. Co. v. Rampart Air, Inc.*, 777 F. Supp. 704, 712 (N.D. Ind. 1991) (same).

Defendants' motion to dismiss raised multiple defects with the original complaint, namely that Penobscot must obtain legal representation to remain as a Plaintiff, that the court lacks personal jurisdiction over the Defendants, and that Plaintiff fails to plausibly allege the veil-piercing and unjust enrichment claims. Critically, Defendant's argument that this Court lacks personal jurisdiction is the same as it relates to the Amended Complaint.[2] The Amended Complaint adds factual allegations regarding Defendants' communications and payments directed to Plaintiff in Tennessee, but it advances the same jurisdictional theory the original motion challenged as insufficient, and Defendants addressed this issue in their motion. Because this jurisdictional issue remains in the Amended Complaint, the Court will consider the initial motion to dismiss as addressed to the Amended Complaint and resolve the merits of that issue in Part III of this order. There is no need to "exalt form over substance," 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990), and for these reasons, the Court will deny Plaintiff's motion to deny the motion to dismiss.

Plaintiff also requests that the Court afford him an additional twenty-one days to respond to the motion to dismiss. In support, he argues that he has not yet been granted pro se e-filer status and that he is working under paper-filing and travel constraints. Paper filing status alone is not a

---

[2] Because the jurisdiction issue is dispositive as to all claims, the Court has not considered the merits of the veil-piercing or unjust enrichment claims.

3

sufficient reason to warrant an extension of time to respond, and Plaintiff has not provided any details regarding his travel constraints that would demonstrate good cause for an extension. Further, Plaintiff has filed, within the response deadline, the instant motion, a motion seeking injunctive relief, and the Amended Complaint that addresses, or attempts to address, the defects identified in the motion to dismiss. His paper filing status and travel constraints have not prevented him from responding to the motion or pursuing injunctive relief in this case. Accordingly, the motion for an extension of time to respond is also denied.

## III. DEFENDANTS' MOTION TO DISMISS [DOC. 10]

Defendants move to dismiss on three grounds: first, Penobscot as a corporation must be represented by an attorney to proceed as a Plaintiff; second, this Court lacks personal jurisdiction over the Defendants under Federal Rule of Civil Procedure 12(b)(2); and third, Plaintiffs fail to plausibly allege the veil-piercing and unjust enrichment claims under Rule 12(b)(6). This first ground is now moot. By removing Penobscot as a Plaintiff in the Amended Complaint, Davis has eliminated the only corporate party, leaving himself as the sole Plaintiff proceeding pro se. The Court will move then to the personal jurisdiction issue, and, because the Court does not have general or specific jurisdiction over the Defendants, will grant the motion without reaching the 12(b)(6) argument.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)) When a court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, as the Court does here,

it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). In such cases, the plaintiff "need only make a prima facie showing of jurisdiction." *Bird*, 289 F.3d at 871 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). The court may not weigh "the controverting assertions of the party seeking dismissal." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

## B. Analysis

Plaintiff bears the burden of establishing through specific facts that the Court has personal jurisdiction over Defendants. *See, e.g., Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). "The Fourteenth Amendment's Due Process Clause" constrains a Court's "power to exercise jurisdiction over a defendant." *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). Tennessee's long-arm statute, applicable here, allows the Court to exercise personal jurisdiction to the full extent the Due Process Clause permits. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019) (citations omitted). For personal jurisdiction to exist, a defendant must have certain contacts with a forum such that maintaining a suit there is reasonable "in the context of our federal system" and "'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co.*, 592 U.S. at 358 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)). Personal jurisdiction may be general or specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

### 1. The Court Lacks General Jurisdiction Over Defendants

"General jurisdiction exists when a defendant's relationship with the forum state is "so 'continuous and systematic' as to render [it] essentially at home" there." *Carbone v. Kaal*, 140

F.4th 805, 810 (6th Cir. 2025) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation is at home in the states "where it is incorporated or has its principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Merely conducting business in a state, "even if occurring at regular intervals, [is] not enough to warrant" the exercise of general jurisdiction. *See Goodyear*, 564 U.S. at 929; *see also Daimler*, 571 U.S. at 132 (noting that a corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity"). A court possesses general jurisdiction over an individual only in the state where they are domiciled.

Plaintiff fails to establish that this Court has general jurisdiction over either Defendant. Bella Vista is a California limited liability company with a principal place of business in California. Baszucki is an individual domiciled in California. Plaintiff does not plead otherwise. Therefore, this Court does not have general jurisdiction over Defendants.

**2. The Court Also Lacks Specific Jurisdiction Over Defendants**

Specific jurisdiction requires that the claim "arise out of or relate to the defendant's contacts with the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). The Sixth Circuit has established a three-part test for determining whether the court may exercise specific jurisdiction over a defendant as established in *Southern Machine Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968): first, the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; second, the cause of action must arise from the defendant's activities there; and finally, defendant's actions or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over defendant reasonable. "[E]ach criterion represents an independent

6

requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1303 (6th Cir. 1989).

The purposeful availment requirement is "the *sine qua non* for *in personam* jurisdiction." *Id.* at 1300 (quoting *Mohasco Indus.*, 401 F.2d at 381-82). To satisfy this criterion, the defendant must have purposefully availed himself of the "privilege of acting in the forum state or causing a consequence in the forum state." *Id.* at 1299 (quoting *Southern Machine*, 401 F.2d at 381). This must be a result of the defendant's "own choice"—such as "deliberately" attempting to enter a particular market or contractual relationships in Tennessee—not a "'random, isolated, or fortuitous'" circumstance. *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). The "unilateral activity" of the plaintiff cannot be the basis of exercising personal jurisdiction over a defendant. *Walden*, 571 U.S. at 284. Regarding contract disputes, the Sixth Circuit has held that "the mere existence of a contract between [a defendant] and [a plaintiff] for seventeen months is insufficient to confer personal jurisdiction over [the foreign party]." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000). The reason is that personal availment turns on the quality and nature of the parties' contacts with the forum, not the sheer number of contacts or the duration of the contractual relationship. *Id.*

This is a case in which Defendants' contacts with Tennessee were fortuitous rather than a deliberate choice. The contract itself gives no indication of any relationship to Tennessee. Defendants entered into a contract with Penobscot to purchase stock on a sixteen-month payment schedule. Penobscot is a Colorado corporation with a principal place of business in Colorado. The contract identifies Penobscot as a Colorado corporation, and Davis signed the contract on behalf of Penobscot listing an Aurora, Colorado address. The contract's choice of law forum is Delaware.

No facts connect the subject matter or performance of the contract on its face to Tennessee. *See Kerry Steel Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) (holding that that an out-of-state defendant did not purposefully avail itself of the forum state because, in part, no facts connected the subject matter or performance of the contract to the forum state). Additionally, the assignment of interest from Penobscot to Davis was executed in Denver, Colorado and is subject to Colorado law. The purposeful-availment question asks whether the defendant deliberately reached into the forum. That question here is answered by Defendants' dealings with Penobscot, the party with whom they contracted. Those dealings point to Colorado and Delaware, not Tennessee. Davis is an assignee who took the receivable months after the contract was formed, and his decision to enforce it from Tennessee is the "unilateral activity" of the plaintiff that cannot give this Court personal jurisdiction over Defendants.

In the Amended Complaint, Plaintiff points to the communications and payments between the parties while he was physically present in Tennessee. He states that Defendants "purposefully directed transaction-related and performance-related conduct toward Davis in Tennessee, created and maintained a continuing installment-payment relationship connected to Davis/PEI, and caused foreseeable economic injury to Davis in Tennessee." [Doc. 17, ¶ 27]. After Defendants' alleged breach, Plaintiff sent them multiple communications listing a Tennessee address.

The Sixth Circuit has repeatedly held that these types of contacts simply do not constitute purposeful availment. *See, e.g., Kerry Steel*, 106 F.3d at 151 ("The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." (quoting *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982))); *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir.

1989) ("The telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions."). This is illustrated in *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, where the foreign defendants had "numerous contacts" with the plaintiff in Michigan by telephone, telecopy and mail, and caused funds to be transferred to Michigan in response to invoices sent by the plaintiff. 107 F.3d 386, 391 (6th Cir. 1997). The Sixth Circuit held that it would be unreasonable for Michigan to assert jurisdiction over the defendants and found it "purely fortuitous" that the defendant had any contact with Michigan. *Id.* at 395. "The defendant was not attempting to 'exploit any market for its products' in the state of Michigan, but rather had contact with the state only because the plaintiff chose to reside there." *Calphalon*, 228 F.3d at 722-23 (quoting *Int'l Techs. Consultants*, 107 F.3d at 395). To establish personal jurisdiction, an out-of-state defendant must choose to direct their activities toward the forum state; "[i]f instead they are choosing to direct their activities toward a particular person, and that person merely happens to live in the forum state, that is not enough." *Baker v. Bensalz Prods., Inc.*, 480 F. Supp. 3d 792, 805 (S.D. Ohio 2020).

Such is the case here. Defendants were not attempting to expand their business into Tennessee and only had contact with the state because Plaintiff chose to live there. It is not clear from the Amended Complaint or the Motion to Dismiss when the Defendants first learned that they were even making communications with Plaintiff in Tennessee. Plaintiff states that "Defendants knew that Davis was located in Tennessee when Davis sent the February 22, 2026 final demand and related correspondence from Tennessee, identified his Tennessee mailing information and required performance to be received or enforced from Tennessee." [Doc. 17, ¶

Case 2:26-cv-00099-DCLC-CRW    Document 22    Filed 06/08/26    Page 9 of 11
PageID #: 303

31]. If Defendants were not even aware of the Tennessee connection until months after they allegedly breached the contract, they could not have purposefully availed themselves of the forum state. Yet even if Defendants knew that Davis was in Tennessee before entering into the contract, Plaintiff has not shown that they chose to create "continuous and substantial" consequences in Tennessee. *See Lanier v. American Board of Endodontics*, 843 F.2d 901, 911 (6th Cir. 1988) (finding there was purposeful availment when the out-of-state defendant sought to associate with the in-state plaintiff to further its business and create "continuous and substantial" consequences in the state).

Any payments Defendants submitted to Plaintiff in Tennessee do not change the purposeful availment analysis. These payments were for the stock sold by Penobscot in Colorado to the California-based Bella Vista. Defendants simply sent payments to the address or bank account Plaintiff or Penobscot directed them to. Plaintiff could as easily have forwarded payment to any address in any state. "The choice to send [payments] to Tennessee was for the plaintiff's convenience, not for the purpose of permitting [the defendant] to avail itself of the privilege of conducting business in Tennessee." *Moore v. Shanahan Eng'g, Inc.*, No. 3:20-CV-00021, 2020 WL 5039443, at *5 (M.D. Tenn. Aug. 25, 2020) (noting that courts "generally agree" that payments made by an out-of-state defendant to the forum state do not constitute purposeful availment); *see also Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) ("[T]he combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.").

Plaintiffs have not made sufficient allegations that Defendants purposefully availed themselves of the privilege of conducting activities within Tennessee. Consequently, Defendants' contacts with Tennessee do not satisfy the Constitutional due process requirement. Because the Court lacks personal jurisdiction to hear this case, it does not reach the substantive issues raised in the motion pursuant to Rule 12(b)(6).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [Doc. 10] is **GRANTED**. Plaintiff's Motion for Expedited Ruling on Pending Pro Se E-Filer Motion [Doc. 18] is **DENIED AS MOOT**, as Plaintiff was granted pro se e-filer status in the Order dated May 28, 2026 [Doc. 16]. Plaintiff's Motion to Deny Defendant's Motion to Dismiss [Doc. 19] is **DENIED** for the reasons set forth above. Plaintiff's Emergency Motion for Status Conference and for Order Requiring Notice Before Any Application for Prejudgment Attachment, Garnishment, or Restraint of Home-Sale Proceeds [Doc. 20], and Notice Regarding Service of Todd Paul Baszucki and Motion for Clarification, Issuance of Summons, or Extension of Time if Necessary [Doc. 21] are **DENIED AS MOOT**. A separate judgment shall enter.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge

11